IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| MAGNOLIA PEARL, LLC; AND § | |
| MAGNOLIA PEARL TEXAS LLC, § | |
| Plaintiffs, § | |
| V. § | |
| § | A-23-CV-1315-DII |
| APT DESIGNS INC. D/B/A/ THE § | |
| PAPER LACE, § | |
| Defendant. § | |

# REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

Before the court is Defendant's Motion to Dismiss Petition for Declaratory Judgment (Dkt. 7) and all related briefing.[1] After reviewing the pleadings, the relevant case law, as well as the entire case file, the undersigned submits the follow Report and Recommendation.

**I.  BACKGROUND**

Magnolia Pearl designs and makes high-end clothes and accessories. Dkt. 1 (Compl.) ¶ 7. It sells its clothes and accessories through independent retailers, a large retail operation, its own retail locations, and its website. *Id*. Magnolia Pearl requires boutiques that carry its products to agree "not to market or sell copies or imitations of Magnolia Pearl merchandise of the work of any design that mimics or cheapens the image of Magnolia Pearl." Compl. ¶ 8. On September 11, 2023, Magnolia Pearl sent an acknowledgement to boutiques that carry its products requesting the boutiques to acknowledge Magnolia Pearl's policy to "only authorize and sell products to retailers who do not carry brands that dilute the Magnolia Pearl brand including . . . The Paper Lace."

---

[1] The motion was referred by United States District Judge Robert Pitman to the undersigned for a Report and Recommendation as to the merits pursuant to 28 U.S.C. § 636(b), Rule 72 of the Federal Rules of Civil Procedure, and Rule 1 of Appendix C of the Local Rules of the United States District Court for the Western District of Texas. *See* Text Order dated March 27, 2024.

Compl. ¶ 9, Exh. 2. This caused at least seven retailers to stop doing business with Defendant APT d/b/a The Paper Lace, which in turn cost APT to lose $29,218.32 in revenue. Compl. Exh. 3 (Demand Letter).

On October 16, 2023, through counsel, APT sent a demand letter to Magnolia Pearl seeking $29,218.32 damages for APT's lost revenue, continuing attorney's fees, and a retraction of the September 11, 2023 acknowledgment. Compl. ¶ 40, Demand Letter. Through the demand letter, APT asserted Magnolia Pearl's September 11, 2023 e-mail correspondence to APT's customers, as well as the Acknowledgment of Magnolia Pearl Wholesale License Form, constitutes defamation or tortious interference. Compl. ¶ 40, Demand Letter. In consideration for timely payment and other conditions, APT stated it would release Magnolia Pearl from liability for defamation and tortious interference with contracts. Compl. Exh. 3. If no payment was received, APT threatened to file suit in Georgia for defamation, tortious interference with contract, "and APT's continuing attorney's fees." Compl. ¶¶ 40-42, Demand Letter.

On October 30, 2023, under diversity jurisdiction, Magnolia Pearl filed this declaratory judgment action seeking a declaration that it had not defamed APT and it had not tortiously interfered with APT's business relationships. Compl. APT moves to dismiss this case. APT first argues the court lacks diversity jurisdiction because the amount in controversy is not met. Second, APT argues Magnolia Pearl's claims are an improper preemptive strike that misuse the federal Declaratory Judgment Act and fail to state a claim for which relief may be granted. Finally, APT argues Magnolia Pearl fails to establish that the court has personal jurisdiction over APT and that Texas is the proper forum for this suit.

The court will first address the subject matter jurisdiction issue. If this court finds it has subject matter jurisdiction, it will then address APT's other arguments.

## II.   SUBJECT MATTER JURISDICTION

"The objection that a federal court lacks subject-matter jurisdiction, *see* FED. R. CIV. P. 12(b)(1), may be raised by a party, or by a court on its own initiative, at any stage in the litigation, even after trial and the entry of judgment." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006). Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action. FED. R. CIV. P. 12(h)(3). "Diversity jurisdiction under 28 U.S.C. § 1332 only exists where the parties are citizens of different states and the amount in controversy exceeds $ 75,000." *White v. FCI USA, Inc.*, 319 F.3d 672, 674-675 (5th Cir. 2003). If the asserted basis of federal jurisdiction is the diversity of the parties, the party seeking to invoke federal diversity jurisdiction bears the burden of establishing both that the parties are diverse and that the amount in controversy exceeds $75,000. *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002).

To determine the amount in controversy, courts generally accept a plaintiff's good faith claim. *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288–89 (1938); *In re 1994 Exxon Chem. Fire*, 558 F.3d 378, 387 (5th Cir. 2009). "But if, from the face of the pleadings, it is apparent, to a legal certainty, that the plaintiff cannot recover the amount claimed or if, from the proofs, the court is satisfied to a like certainty that the plaintiff never was entitled to recover that amount, and that his claim was therefore colorable for the purpose of conferring jurisdiction, the suit will be dismissed." *St. Paul Mercury*, 303 U.S. at 289; *see also St. Paul Reinsurance Co. v. Greenberg*, 134 F.3d 1250, 1253 (5th Cir. 1998). Congress enacted the amount in controversy requirement to ensure that "diversity jurisdiction does not flood the federal courts with minor disputes." *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005).

The parties' complete diversity is apparent and not disputed. Instead, the parties dispute whether the amount in controversy requirement is met. APT argues the damages in its demand letter were well below the statutory threshold at $29,218.32. Magnolia Pearl argues that APT's request for attorney's fees raises the amount in controversy to more than $75,000.

Where a statute provides for attorney's fees, those fees may be included as part of the amount in controversy requirement. *Manguno*, 276 F.3d at 723; *Foret v. S. Farm Bureau Life Ins. Co.*, 918 F.2d 534, 537 (5th Cir. 1990) (citing *Graham v. Henegar*, 640 F.2d 732, 735 (5th Cir. 1981); *Premier Indus. Corp. v. Texas Indus. Fastener Corp.*, 450 F.2d 444, 447 (5th Cir. 1971); 14A C. Wright & A. Miller, Federal Practice & Procedure § 3712, at 176 (2d ed. 1985) ("The law is now quite settled that attorney's fees are a part of the matter in controversy when they are provided for by contract or by state statute.")).

In its demand letter, APT asserted that if APT filed suit it would seek "APT's continuing attorney's fees per O.C.G.A § 13-6-11." Compl. Demand Letter at 4. That statute states:

> The expenses of litigation generally shall not be allowed as a part of the damages; but where the plaintiff has specially pleaded and has made prayer therefor and where the defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense, the jury may allow them.

O.C.G.A § 13-6-11. District courts in Georgia apply a Rule 12(b)(6) analysis to determine whether a claim for attorney's fees under § 13-6-11 has been sufficiently pleaded if those fees are required to reach the amount in controversy requirement. *See Singhose v. GoLabs*, *Inc.*, No. 1:23-CV-00199-SDG, 2024 WL 2406787, at *2 (N.D. Ga. Mar. 22, 2024).

In the Complaint, Magnolia Pearl relies on the demand letter to allege these fees are actually at issue in this case. Compl. ¶¶ 18, 42. But nowhere in its Complaint does Magnolia Pearl allege it "has acted in bad faith, has been stubbornly litigious, or has caused [APT] unnecessary trouble and expense." *See* O.C.G.A § 13-6-11. Additionally, despite asserting that it would seek

4

fees under this statute, nowhere in APT's demand letter does APT describe facts that would entitle it such fees. *See* Compl. Demand Letter. Moreover, there is no claim concerning APT's entitlement to fees under O.C.G.A § 13-6-11 asserted in the Complaint. Accordingly, the court finds that Magnolia Pearl's assertion that APT's attorney's fees are at issue in this case is not well pled and cannot be used to reach the amount in controversy requirement.

Alternatively, Magnolia Pearl argues the value of the litigation to Magnolia Pearl is greater than $75,000. Magnolia Pearl argues it "alleged that retraction of its statements and the requirement that its customers adhere to not 'market or sell copies or imitations of Magnolia Pearl merchandise of the work of any design that mimics or cheapens the image of Magnolia Pearl' would also result in damages far exceeding $75,000." *See* Compl. ¶ 43. Magnolia Pearl argues it filed this suit to protect its business interests and its damages would exceed $75,000 due to the devaluing of its brand and injury to its customer relationships.

However, Magnolia Pearl's pleaded allegation as to the value of the demanded retraction is entirely conclusory. *See* Compl. ¶ 43. Most importantly, although APT sought a retraction in its demand letter, Magnolia Pearl only seeks a declaratory judgment that it did not defame APT and did not tortiously interfere with APT's contractual relationships. Compl. ¶¶ 44-56. The only pleading of damages related to the claims asserted by Magnolia Pearl is APT's lost revenue of $29,218.32. Further, this suit is limited to Magnolia Pearl's actions with respect to APT. It will not determine whether Magnolia Pearl can continue its policies with respect to other brands.

Accordingly, Magnolia Pearl has not shown that its declaratory judgment action involves more than $75,000 in controversy. Because the court lacks subject matter jurisdiction, it will not reach APT's additional arguments.

### III. RECOMMENDATION

For these reasons, the undersigned **RECOMMENDS** that Defendant's Motion to Dismiss Petition for Declaratory Judgment (Dkt. 7) be **GRANTED** and this case be **dismissed without prejudice** for lack of subject matter jurisdiction.

### IV. OBJECTIONS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battles v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415 (5th Cir. 1996) (en banc).

SIGNED July 25, 2024,

_____
MARK LANE
UNITED STATES MAGISTRATE JUDGE